UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JASON TREVON WHARTON,

      Petitioner,

v.                                                              Case No. 1:22cv273-AW-HTC

SECRETARY FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Jason Trevon Wharton filed an Amended Petition under 28 U.S.C. § 2254, raising nine (9) grounds challenging his conviction and sentence for burglary and battery in the circuit court of Alachua County, Florida, in case no. 2018 CF 4312. Doc. 16.   After considering the amended petition, the record, the Secretary's response, Doc. 21, and Wharton's reply, Doc. 26, the undersigned finds the Amended Petition should be DENIED without an evidentiary hearing.

## I.    BACKGROUND

Following a trial, the jury found Wharton guilty of burglary of a dwelling with a battery.  Wharton committed the crimes on Ms. Grant-Martin, his upstairs neighbor in their Gainesville, Florida, apartment complex.  On July 8, 2019, the court adjudicated Wharton guilty and sentenced him to life in prison.

Wharton filed a direct appeal of his judgment and conviction to the First

District Court of Appeals ("First DCA"), which issued a written opinion affirming the conviction on January 21, 2021.  Doc. 21-8; Case No. 1D19-2483.  The First DCA issued its mandate on February 11, 2021.  Doc. 21-9.  Because the First DCA issued a written opinion, Wharton could have sought to invoke the discretionary jurisdiction of the Florida Supreme Court within thirty (30) days of the mandate.  However, he did not.  Therefore, Wharton's conviction became final the first business day after the 30-day period expired.  *See Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012).[1]  In this case, that was Monday, March 15, 2021.

In the interim, Wharton filed a Motion to Correct Illegal Sentence on March 11, 2021.  Doc. 21-10 at 15.  That motion was continuously pending until November 29, 2021.  Doc. 21-17.  Also pending during that time was a Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion"), which Wharton filed on August 11, 2021, Doc. 21-18 at 17.  That motion was continuously pending until October 26, 2022, Doc. 21-23 at 2.  Because of these pending post-conviction motions, the AEDPA 1-year statute of limitations did not start to run until October 27, 2022.[2]  By then, however, Wharton had already filed

---

[1] In the Secretary's response, the Secretary states that Wharton's judgment and conviction became final on April 21, 2021.  However, when a petitioner does not pursue all avenues of direct review available, the 90-day period for seeking certiorari review from the United States Supreme Court is not incorporated into the determination of when a judgment becomes final.  *See Gonzalez*, 565 U.S. at 154.  This error, however, is irrelevant because even under the Secretary's analysis, the Secretary does not dispute the petition is timely.

[2] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one year of certain trigger dates – the pertinent one here being one year from

the instant federal petition.  Doc. 1 at 25.  Therefore, the petition was timely filed.[3]

## II.    LEGAL STANDARDS

### A.    The AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28

U.S.C. § 2254.  Under the AEDPA, relief may only be granted on a claim adjudicated

on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White*

*v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of

the governing legal principles set forth in the decisions of the United States Supreme

Court when the state court issued its decision.  *Id.*  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the

governing law set forth by Supreme Court case law; or (2) reached a different result

from the Supreme Court when faced with materially indistinguishable facts.  *Ward*

---

final judgment.  28 U.S.C. § 2244(d)(1)(A).  Properly filed post-conviction motions, such as a motion under Florida Rule of Criminal Procedure 3.850, will toll the limitations period until the motion is fully resolved.  *Id.* at § 2244(d)(2).

[3] Wharton filed an Amended Petition on March 22, 2023, which is also within the one-year time limitation.  The Amended Petition contains the same grounds for relief as asserted in the original petition, with the exception that it omits grounds four and ten.

*v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Several of Wharton's grounds for relief are premised on ineffective assistance of trial counsel ("IATC").  An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and

the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III. DISCUSSION

### A. Ground One: IATC for Failing to Investigate or Call Alibi Witness

Wharton argues he told defense counsel "well before trial" that he and his fiancée, Sara Trueluck, were at her doctor's office when the offense occurred and supplied the name of the doctor. While defense counsel introduced testimony from Trueluck that the two were at the doctor at the time of the offense, Doc. 21-4 at 305-06, and introduced a letter from the doctor saying Trueluck was at the appointment,[4] Wharton argues counsel was ineffective for failing to call the doctor, Dr. Rhonda

---

[4] Doc. 21-3 at 158. The fiancée testified she asked the doctor to include Wharton in the letter, but the doctor declined because Wharton was not her patient. Doc. 21-4 at 409.

Williams, to testify that Wharton was there as well.  Doc. 16 at 14-15.

Wharton exhausted this claim by raising it as Issue VIII of his Rule 3.850 Motion, Doc. 21-18 at 27, and on appeal, Doc. 21-19 at 21 (Issue Five in the appeal). Because the First DCA issued a *per curiam* affirmance without a written opinion, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale, presume that the unexplained decision adopted the same reasoning and apply the AEDPA deference to that decision.[5]  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  Here, that last decision comes from the circuit court's order denying the Rule 3.850 Motion.  Doc. 21-18 at 108.

The circuit court applied *Strickland* and found that Wharton failed to show either error by counsel or prejudice in failing to call Dr. Williams as an alibi witness. *Id.* at 108-12.  This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

To allege a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the movant must state: (1) the identity of the witness; (2)

---

[5] However, in assessing the reasonableness of the state court's ruling, this Court is not limited to the particular justifications provided by the state court and may consider any potential justification for its *ultimate* conclusion, including implicit findings it could have made in support of its ruling. *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.").

the substance of the witness's testimony; (3) how the omission of this testimony prejudiced the outcome of the case; and (4) that the witness was available to testify at trial. *Haag v. Sec'y, Dep't of Corr.*, 2017 WL 6550884, at *9 (M.D. Fla. Sept. 25, 2017). The decision regarding which witnesses to call is "one that federal courts will seldom, if ever, second guess." *Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)). Thus, to succeed on such an IATC claim, a petitioner must provide the court with something other than "[s]peculation about what witnesses could have said." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Here, however, Wharton offers no evidence about what the substance of Dr. Williams' testimony would have been "in the form of actual testimony by the witness or an affidavit." *See Ashimi*, 932 F.2d at 650. He claims that Dr. Williams "could have addressed the [alibi] issue herself," but any belief that Dr. Williams was reasonably likely to testify in a way that would have helped his case is purely speculative. Doc. 26 at 4. To the contrary, as the circuit court noted, "If Dr. Williams would not verify in her letter that Defendant was present, there is not a reasonable probability that she would have verified Defendant's presence had she been called as a witness at trial." Doc. 21-18 at 111. Indeed, given the weight of

other evidence contradicting Trueluck's testimony regarding Wharton's alibi, no reasonable jurist would believe that Dr. Williams would have testified Wharton was with Trueluck at her office on December 18.

As the circuit court set out in its order, the State presented evidence of a recorded jail call between Wharton and Trueluck, in which Trueluck shared her idea for an "alibi" for Wharton, which she appeared to manufacture for Wharton's use at trial. Doc. 21-4 at 389-90. During the recorded call, Trueluck described the "alibi" in coded terms as a defense utilized by "a friend." *Id.* However, at trial Wharton and Trueluck each admitted that Trueluck was referring to herself and Wharton while discussing the "alibi" on the jail call. *Id.* at 394-95, 404-06.

Additionally, Wharton's mother, Nadine King, also contradicted portions of the alibi. Doc. 12-18 at 110-11. For example, Trueluck testified that on December 14, 2018, she went to Gainesville and picked up Wharton to bring him to Waycross, Georgia, so he could attend her doctor's appointments with her. Doc. 21-4 at 303. She further stated that the first thing she did upon arriving in Gainesville on December 14th was "to go see Jason and his mom." *Id.* at 304. However, King testified she moved away from Gainesville on November 29, 2018, and moved in with Trueluck in Tifton, Georgia. *Id.* at 340. King further testified that on the evening of December 18, 2018, Trueluck was with her in Tifton, Georgia, when she got a phone call from the victim advising her about the altercation with Wharton and that Wharton was not with them at that time. *Id.* at 340-41.

Also, Trueluck testified that she picked up Wharton in Gainesville on December 14, 2018, and took him to Waycross, Georgia, and that they did not return to Gainesville until Wednesday, December 19, 2018. *Id.* at 303-06. However, Wharton's probation officer, Marie Brown, testified that she met with Wharton at his apartment in Gainesville on December 16, 2018. *Id.* at 331-32.

And even assuming for the sake of argument that Dr. Williams would have testified Wharton was with Trueluck that day, her testimony would have simply been cumulative to Wharton's and Trueluck's testimonies. Thus, the postconviction court's conclusion that Wharton had not established deficient performance nor prejudice was not objectively unreasonable. Wharton is not entitled to relief on Ground One.

## B.   Ground Two: Prosecutorial Misconduct by Making Disparaging Comments about Alibi Defense and Alibi Witness's Veracity

In Ground Two, Wharton argues the prosecutor engaged in prosecutorial misconduct during his trial by asking the following questions or making the following statements:

• The prosecutor asked alibi witness, Sara Trueluck, "[A]re you ready to admit that you made all this up yet?  Doc. 21-4 at 309-10.

• The prosecutor asked Ms. Trueluck, "[Y]ou'll do anything to help him[?]" *Id.* at 316.

• Referring to Ms. Trueluck's doctor, the prosecutor asked Ms. Trueluck, "[S]he wouldn't lie for you . . . .[?]" *Id.* at 409.

• The prosecutor accused Ms. Trueluck of being a liar. *Id.* at 309-10, 483-85.

• The prosecutor repeatedly referred to Petitioner's defense as being "fabricated or made up." Doc. 16 at 15-16.

Wharton exhausted this issue by raising it in his Motion for New Trial, Judgement of Acquittal, and Judgement Notwithstanding the Verdict, Doc. 21-3 at 58-59, and on direct appeal, Doc. 21-5. The circuit court denied the motion without explanation, Doc. 21-3 at 64, and the First DCA issued a short, written opinion stating, "We further conclude that, cumulatively, the alleged errors identified by Wharton do not amount to reversible fundamental error." Doc. 21-8. This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

A claim that prosecutorial comments violated due process requires the court to "consider whether the prosecution's conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1357 (11th Cir. 2024) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court evaluates the trial record as a whole in making this determination. *See Darden v. Wainwright*, 477 U.S. 168, 181–83 (1986); *see also, Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997) ("[I]solated or ambiguous or unintentional remarks must be viewed with lenity." (quotation omitted)). District courts should utilize a two-part test in analyzing prosecutorial misconduct claims involving a state prosecutor's statements. First, the

court should determine "whether particular arguments by a prosecutor were improper and if so, to determine what the probable effect of the improper argument was on the jury." *Wilson v. Kemp*, 777 F.2d 621, 623 (11th Cir. 1985). Second, the court must determine "whether there was a reasonable probability that, in the absence of the offending remarks, the . . . outcome would have been different." *Tucker v. Kemp*, 802 F.2d 1293, 1295 (11th Cir. 1986) (per curiam) (internal quotation marks omitted). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Id.* at 1296.

Wharton argues the prosecutor improperly "presented a veritable buffet platter of direct accusations that alibi witness, Sara Trueluck was lying." Doc. 16 at 15. There was, however, nothing improper about the prosecutor's statements because "prosecutors may argue about the defense witnesses' credibility when the defense has attacked the State witnesses' credibility." *Russ v. Dep't of Corr.*, 476 F. App'x 706, 709–10 (11th Cir. 2012) ("As the record shows, the prosecutor was arguing about the credibility of the defense witnesses, which he was entitled to do since Russ had attacked the credibility of the State's witnesses.") (citing *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984)).

Here, the defense attacked the credibility of the State's main witness, the victim Ms. Grant-Martin. For example, defense counsel argued in his opening that Truelock and Wharton would testify they were together in Georgia at the time of the

offense, "showing how Ms. Grant-Martin's version just doesn't add up."  Doc. 21-4 at 299-300.  Later, in closing, defense counsel told the jury: "I want to start out by telling you, in no way, shape, or form am I suggesting that Ms. Grant-Martin was telling the truth in this is happening."  *Id.* at 471.  Defense counsel also argued that the lack of marks on the victim contradicted her claim that Wharton hit her and "showcase[ed] that what she is saying is not true."  *Id.* at 473.  Counsel further attacked the victim's credibility by arguing, "So it's hard to keep track of all of those things when you're making something up."  *Id.*  Finally, defense counsel argued that there must have been some issue between her and Wharton, perhaps involving money, "for her to come up with this."  *Id.* at 475.  Because the defense's strategy was to attack the credibility of the State's main witness, the prosecutor did not err by doing the same with the defense's witnesses.

Moreover, the allegedly prejudicial comments made by the prosecutor were permissible inferences to be drawn from the evidence.  As noted in Ground One, the State presented significant evidence contradicting Trueluck's alibi testimony.  The prosecutor was permitted to argue that the evidence showed that Trueluck was lying. *See United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978) (a prosecutor has a "right to state his contention as to the conclusions that the jury should draw from the

evidence.").[6]  Wharton is not entitled to relief on Ground Two.

> **C.    Grounds Three & Five: Prosecutorial Misconduct by Commenting on witnesses Not Called by Defense (*Haliburton* Error) and Trial Court Error in Denying Motion for Mistrial Based on *Haliburton* Error**

Grounds Three and Five are addressed together because the issues overlap.  In Ground Three, Wharton takes issue with the prosecutor's question to Trueluck regarding the absence of other alibi witnesses – Trueluck's family members – who "had to have seen [her] and Mr. Wharton together in Georgia?"  Doc. 21-4 at 409-10.  Wharton argues this comment violated *Haliburton v. State*, 561 So. 2d 248 (Fla. 1990), because the State was implying that the defense had the burden to produce witnesses and failed to meet that burden.  *Id.*  In Ground Five, Wharton argues the trial court erred by denying a motion for mistrial based on the same violation.

When defense counsel moved for a mistrial, the prosecutor responded that he did not violate *Haliburton* because the potential witnesses were not people that were equally available to the prosecution.  The prosecutor explained, "[t]hese are people solely in [Trueluck's] purview and would be incumbent upon her to bring if they existed.  So it's certainly fair for me to comment on her not bringing these people."  *Id.*  After hearing argument from each side, the trial court agreed with the prosecution.  Doc. 21-4 at 421-22.  Wharton raised this issue again in a motion for

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

new trial, Doc. 21-3 at 58-59, arguing that the "culmination of errors, even if harmless errors, during the course of the trial also created fundamental unfairness and warrants a new trial . . . . including, but not limited to the Haliburton issue."

The trial court denied the motion without explanation, *id.* at 64, and Wharton raised the issue on direct appeal. Doc. 21-5 at 24-27 & 38-41. In his initial brief, Wharton analyzed the claim mostly under Florida law, especially *Haliburton* itself, but concluded by arguing, "This entire debacle was a violation of due process on both a state and federal level." *Id.* at 41. The First DCA affirmed in a written opinion, explaining, "With respect to Wharton's *Haliburton* claim, we conclude that the State's questioning concerning the absence of certain potential alibi witnesses falls within the narrow 'special relationship' exception as explained in *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991). We further conclude that, cumulatively, the alleged errors identified by Wharton do not amount to reversible fundamental error." Doc. 21-8 at 2.

In his Amended Petition, Wharton relies exclusively on *Haliburton* and Florida law; he makes no mention of federal law. Doc. 16 at 8-10. Since this raises a pure state law claim, Wharton is not entitled to federal habeas relief. The Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law ...." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Estelle*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, "a state court's interpretation

of state law ... binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted); *see Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("state law is what the state courts say it is"). Thus, this Court must defer to the state court's interpretation of state law. *See Vega v. Sec'y, Dep't of Corr.*, 2021 WL 4439245, at *5 (11th Cir. Sept. 28, 2021) (quoting *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017)).

Moreover, even if Wharton had raised this as a federal due process claim, as he did on direct appeal, he would not be entitled to habeas relief. "[T]he bar for granting habeas based on prosecutorial misconduct is a high one," *Land v. Allen*, 573 F.3d 1211, 1220 (11th Cir. 2009); therefore, "prosecutorial misconduct, though outside the bounds of propriety, is not reversible error where it does not render the trial fundamentally unfair." *Brooks v. Francis,* 716 F.2d 780, 788 (11th Cir. 1983) (citation omitted). Here, the prosecutor's isolated comment did not render the trial fundamentally unfair. First, as discussed in Ground One, substantial other evidence contradicted the alibi defense presented by Truelock and Wharton. Thus, the prosecutor's comment on the absence of other witnesses was not a major factor in the prosecution's argument. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974) ("[T]he prosecutor's remark here, admittedly an ambiguous one, was but one moment in an extended trial . . . . [W]e simply do not believe that this incident made respondent's trial so fundamentally unfair as to deny him due process.").

Second, the court gave a curative instruction. "Prosecutorial misconduct is a

basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." *United States v. Cordoba–Mosquera,* 212 F.3d 1194, 1198 (11th Cir. 2000) (citation omitted). The trial court explained to the jury that, "[t]o overcome the Defendant's presumption of innocence, the State has the burden of proving the crime with which the Defendant is charged was committed and the Defendant is the person who committed the crime. The Defendant is not required to present evidence or prove anything." Doc. 21-4 at 490. A judge's curative instruction can remedy the effects of any improper comment and prevent the need for a new trial. *Brooks v. Kemp,* 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds,* 478 U.S. 1016 (1986), *reinstated,* 809 F.2d 700 (1987) (en banc) (citing *Donnelly,* 416 U.S. 637). Curative instructions are viewed as presumptively effective. *See United States v. Stone,* 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.").

Wharton is not entitled to relief on either Ground Three or Five.

**D.    Ground Six: "'Ineffective assistance of counsel' Failure to suppress the statements by the victim, Burglary w/Battery" and Ground Eleven: "State failed to prove Burglary w/Battery"**

Since both of these Grounds involve Wharton's claim that the State failed to show evidence that a burglary with battery occurred, they will be considered together. In Ground Six, Wharton argues: (1) counsel was ineffective because the

State did not prove the offense as charged and (2) counsel should have moved to suppress a jailhouse call where Wharton stated, "I beat her ass because she wouldn't give me my money."  Doc. 16 at 11.  In Ground Eleven, Wharton appears to make the same arguments, that there was insufficient evidence to "prove burglary with battery" and trial counsel was ineffective for failing to suppress a jailhouse call to Trueluck where Wharton talks about the victim owing him money.  *Id.* at 13.

In Wharton's amended 3.850 motion, he argued that he asked his counsel to "file a motion to suppress any statements concerning battery, because no one ever substantiated the battery charge," Doc. 21-18 at 18, and on appeal, Doc. 21-19 at 12-13.  The state court did not reach the merits of the IATC claim, and, instead, denied relief because the court interpreted the claim as attacking the sufficiency of the evidence.  Doc. 21-18 at 104.  The First DCA affirmed without written opinion.  Doc. 21-22.    The state courts' decisions were neither contrary to, nor a misapplication of the facts to, clearly established law.

First, Wharton's claim that no evidence substantiated the battery charge is belied by the trial transcript.  The victim testified she knew who Wharton was, having interacted with him around fifty (50) times by the date of the incident.  Doc. 21-4 at 197.  She testified that on the day of the incident, Wharton came to her door several times telling her he had been asked to pick up the belongings of a man who had just moved out of her apartment, but she refused to give them to Wharton.  *Id.* at 205-06.  She testified that, eventually, after he came to the door one last time and

she refused, he grabbed the door, pushed it open, pushed her into a closet by the door, came inside, and punched her in her face and in the back of her head. *Id.* at 209. Additionally, the 911 call the victim made as the event was happening was played for the jury. *Id.* at 282. In the call, the victim told the dispatcher about the person who lived below her[7] coming to her door to get the other man's stuff and the forced entry and battery which followed: "I told him I'm not giving him the stuff until I speak with the man whose stuff is lost. This man swung my door open while I'm talking to him. Punches me in my face, hit me in the back of the head, pushes me." *Id.*

The victim's testimony clearly supports a finding that a battery occurred. Thus, any motion to exclude the jailhouse call based on lack of evidence of a battery would have been unsuccessful. Likewise, Wharton is not entitled to relief on an IATC claim based on counsel's failure to attack the sufficiency of the evidence as any such motion would have been denied. An attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted).

Second, Wharton's claim that counsel was defective for failing to suppress the jailhouse call is belied by the record because defense counsel <u>did</u> extensively argue that the call should be suppressed, arguing that "the call itself is indicating it's

---

[7] She later identified the intruder as "Creeper," Doc. 21-4 at 284, which she and Ms. Trueluck testified was Wharton's nickname. *Id.* at 156 & 309.

possibly a different incident" and that "[i]t doesn't reference anything that was testified to by Ms. Grant-Martin."  Doc. 21-4 at 232 & 236 ("[T]here's not been a sufficient tie between the testimony from Ms. Grant-Martin and this phone call that she knows nothing about and hasn't been able to comment on. . . .  I would argue it just gives more suggestion that this is talking about possibly some other incident without a connection being established.").  This is the same argument Wharton makes now: that no evidence showed that the discussion of him beating a female over money related to the incident complained of by the victim instead of some other incident.  Doc. 16 at 11.

Before ruling on the admissibility of the call, the trial court directed the prosecutor to play the entirety of the calls to the court, including a portion not played for the jury.  In the full version, Trueluck told Wharton she wanted "to go beat up the girl in G6" because the girl in G6 "called your mom in the middle of the night to tell your mom you jumped on her."  Doc. 21-4 at 234-35.  The victim testified at trial that she (the victim) lived in apartment G6.  *Id.* at 194.  Wharton then responded, "I jumped on her because she wouldn't give me my money, and then she going to hid [sic] it in the damn clothes like I don't see it."  *Id.* at 235.  Trueluck then stated, "Then she was going to tell your momma it was fake money and all of this other stuff."  *Id.*  This correlates with the victim's testimony that the money in the Pop-Tart box in her apartment was fake.  *Id.* at 199.  Based on this, the court found the calls related to the instant offense and allowed the call to be admitted.

In sum, counsel made exactly the arguments Wharton now complains he should have made, and the trial court considered them but simply rejected them because the record did, in fact, contain evidence that the jail call concerned the incident involving Grant-Martin. Accordingly, Wharton is not entitled to relief on Grounds Six or Eleven.

### E.    Ground Seven: Trial Court Error for Failing to Follow Proper Procedures for Finding Defendant Competent

In Ground Seven, Wharton argues the trial court erred by not following proper procedure for addressing the issue of his competency prior to Wharton's sentencing hearing, as required pursuant to Florida Rules of Criminal Procedure. Doc. 16 at 11. He claims the issue of competency was brought up by the defense, but the judge relied upon the opinion of only one doctor to find that Wharton was competent to proceed. *Id.* He argues that under Florida Rules of Criminal Procedure 3.210 through 3.212, the trial judge "must ask the State to produce a psych doctor, and then ask the defense to bring a doctor to rebut the State's doctor vice-versa, and then usually the judge will bring in a doctor to mediate between the defense and the State" and concludes "the procedures were not fulfilled in this case." *Id.* at 19.

However, this procedural competency claim is unexhausted and procedurally defaulted because Wharton failed to raise it on direct appeal of his judgment and sentence, Doc. 21-5, in his amended Rule 3.850 motion, Doc. 21-18 at 17 & 92, or on appeal of the postconviction order. Doc. 21-19. The closest Wharton came to

exhausting the procedural competency claim was in ground five of his Motion for Postconviction Relief. Doc. 12-18 at 23-24. However, he did so in the context of an *IATC* claim – *not* a trial court error claim, as he does here. Thus, his claim in the instant petition is not the "same claim" for purposes of exhaustion.

A "challenge to the trial court's ruling at the competency hearing is not the same claim as a Sixth Amendment ineffective assistance of trial counsel claim, even if the latter is based on counsel's failure to challenge the trial court's ruling. The two are separate and distinct for purposes of satisfying AEDPA's exhaustion requirement." *Wilkins v. Sec'y of Fla. DOC,* No. 3:18-CV-1361-LC-MJF, 2021 WL 3196247, at *13 (N.D. Fla. Feb. 1, 2021), *report and recommendation adopted,* No. 3:18-CV-1361-LC-MJF, 2021 WL 3192383 (N.D. Fla. July 28, 2021) (citing *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim on appeal; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement)); *Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that a substantive claim is "separate and distinct" from an ineffective assistance claim based on counsel's failure to raise the substantive claim).

Wharton, also, cannot return to the state courts now to raise this claim because more than two (2) years has passed since his judgment and conviction became final.

*See* Fla. R. Crim. P. 3.850(b) (setting forth a 2-year statute of limitations for post-conviction motions to vacate a sentence).  Thus, Wharton's procedural competency claim is procedurally defaulted.  Wharton is not entitled to relief on Ground Seven.

### F.    Ground Eight: IATC Based on Cumulative Error

To the extent Wharton is attempting to argue the cumulative effect of the errors identified in the other grounds violated his constitutional rights, his attempt is without merit because he is not entitled to relief on any of the other grounds.  The "cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors."  *Ballard v. McNeil*, 4:08cv347-SPM/EMT, 785 F. Supp. 2d 1299, 1336 (N.D. Fla. 2011) (citing *United States v. Barshov,* 733 F.2d 842, 852 (11th Cir.1984)) ("Without harmful errors, there can be no cumulative effect compelling reversal.").

### G.    Ground Nine: "Denial of Motion for New Trial . . . For All Reasons"

Finally, Wharton is not entitled to relief on Ground Nine because the bases for trial court error in denying a motion for new trial are the same ones addressed in the other grounds for relief, which are without merit.  Notably, Wharton does not add any additional argument in Ground Nine except the fact that a different judge addressed the motion for new trial than the judge who tried the case.  *Id.*  Wharton offers no explanation why having a different judge address the motion made any difference, so any such argument is waived.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."   *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254.   *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing.   *See id.*

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2254 Rule 11(a).   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is

also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1.      That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Wharton*, Alachua County, Florida, Case Number 2018 CF 4312, Doc. 16, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 29th day of April, 2024.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.